December 3, 2025

**HARRIS BEACH MURTHA**
ATTORNEYS AT LAW

THE OMNI
333 EARLE OVINGTON BLVD, SUITE 901
UNIONDALE, NEW YORK 11553
516.880.8484

**ROY W. BREITENBACH**
MEMBER
DIRECT:   516.880.8378
FAX:   516.880.8483
RBREITENBACH@HARRISBEACHMURTHA.COM

The Hon. Rachel P. Kovner
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

RE:   Neurological Surgery Practice of Long Island, PLLC v. Empire HealthChoice HMO, Inc., 2:21-cv-02204-RPK-AYS

Dear Judge Kovner:

      We represent the Plaintiff, Neurological Surgery Practice of Long Island, PLLC, a Long Island-based neurological surgery practice. We write to call the Court's attention to a recent policy adopted by Defendants' parent company that we believe has significant impact on this lawsuit and, specifically, Defendants' currently pending July 2022 motion to dismiss. We respectfully request leave of Court to submit a supplemental memorandum detailing the impact we believe this newly adopted and soon-to-be-implemented policy has on the issues in this lawsuit.

      By way of background, Neurological Surgery is owned by its physician providers and traditionally has chosen to remain out of network for most health plans, including those administered by Defendants. This freedom allows Neurological Surgery's clinicians to decide how to deliver their services to patients free of any outside influence. These clinicians have developed longstanding, personal relationships with patients, which enhance both the quality of patient care and the overall patient experience. Like most freestanding neurosurgery practices on Long Island, Neurological Surgery has witnessed the dramatic lowering of reimbursement rates that are designed to strangle these freestanding multispecialty groups into submission, in favor of hospital-based groups from which Defendants, can better extract low reimbursement rates and increased control.

      To attain these low reimbursement rates and increased control, Defendants have embarked on a campaign of anti-competitive action designed to strangle and force Neurological Surgery and other independent neurosurgery practices out of business. Defendants have significant, anti-competitive motives to enter this scheme including the elimination of competition on quality and fostering a "race to the bottom" on rates that enable Defendants to garner supra-competitive profits that they do not pass along to customers. If allowed to continue unchecked, Defendants' actions will continue to cause substantial and unreasonable harm to competition in the metropolitan area. This will continue to result in decreased output and quality of neurosurgery and other surgical services, higher prices, longer waiting times, and loss of consumer choice.

In this lawsuit, Neurological Surgery brings claims against Defendants under section 1 of the Sherman Act (15 U.S.C. § 1) (Count I); and the New York Donnelly Act (General Business Law §§ 340, *et seq.*) (Count II) seeking to recover damages and other relief for Defendants' illegal and anti-competitive actions.

Defendants moved to dismiss in July 2022 (ECF 31). As Neurological Surgery's opposition papers (ECF 34) explain in detail, this Court should deny the motion for three reasons. *First*, Neurological Surgery has sufficiently pled a vertical combination in restraint of trade between Defendants and each of the hospitals or health systems in New York with which it has a participating provider agreement. These participating provider agreements – in which the hospitals agreed to accept artificially low and manipulated reimbursement rates for neurosurgery physician services – are the mechanism by which Defendants conduct their anti-competitive scheme to exclude independent, freestanding neurosurgery practices from the market. *Second*, this vertical combination has unreasonably restrained trade in the market for neurosurgery services in the New York metropolitan area because it is causing, and will continue to cause, actual adverse anticompetitive effects in that market, including the reduction of output, quality, and consumer choice, as well as an increase in prices. *Third*, the motion is premature; Neurological Surgery should be allowed discovery on its claims or, at the very least, an opportunity to amend its pleadings.

Several weeks ago, Defendants' parent company, Elevance Health (formerly known as Anthem Blue Cross Blue Shield), announced a new policy that will become effective January 1, 2026 in eleven states. It is entitled *Facility Administrative Policy: Use of a Nonparticipating Care Provider*. Under this new policy, Anthem may impose an administrative penalty equal to 10% of the allowed amount on an in-network hospital's claims that involve services rendered by out-of-network providers. These hospitals also are at risk of termination from Anthem's provider network if they continue to allow out-of-network providers to render services. According to the policy's text, its purpose is to encourage and prioritize care to be delivered from participating care providers when a member receives services in the facility-based setting. The policy provides for two exceptions where use of non-participating providers will not be penalized: (1) emergency services; and (2) when Anthem has granted prior approval to use the non-participating provider in the facility setting. Although New York is not one of the eleven states in which Anthem is rolling out the policy on January 1, 2026, Anthem's public statements make it clear that it is only a matter of time before the policy is implemented in New York.

Once implemented, Anthem's new policy will be another part of the vertical combination through which Defendants conduct their anti-competitive scheme to exclude independent freestanding neurosurgery practices. Since virtually all New York hospitals are participating providers in Defendants' networks and will want to avoid the disruption of leaving Defendants' networks or suffering a 10% reduction of their reimbursement, a physician's ability to treat patients in New York hospitals will be dependent on whether she is a participating provider in Defendants' networks. For surgical specialties such as neurological surgery, thoracic surgery, and reconstructive surgery – where access to hospitals is essential – this hinges a specialist physician's economic survival on whether Defendants chose to permit her in the network. This places

significant monopsonistic power in Defendants' hands through which they dictate artificially low, below market reimbursement rates and thereby reduce output and quality.

      Given this recent development, Neurological Surgery respectfully requests leave of Court to submit a supplemental memorandum detailing the impact this newly adopted, and soon-to-be-implemented policy has on the issues in this lawsuit.

                                      Respectfully,

                                      Roy W. Breitenbach

RWB:

cc:    Matthew J. Aaronson, Esq/
       Valerie Sirota. Esq.

**HARRIS BEACH MURTHA**
ATTORNEYS AT LAW

Roy W. Breitenbach, Esq.
The Omni
333 Earle Ovington Blvd, Suite 901
Uniondale, New York 11553

MID-ISLAND NY 117
4 DEC 2025 PM

US POSTAGE ᴵᴹᴵ PITNEY BOWES

ZIP 11553
02 7H      $ 000.74⁰
0006084869   DEC 03 2025

The Hon. Rachel P. Kovner
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

11201-182169